**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NOIN RE: GLUGAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 3094**<br><br>**THIS DOCUMENT RELATES TO ALL CASES**<br><br>**JUDGE KAREN SPENCER MARSTON** |
| **GEORGE GOTTSCHALK, SR.,**<br><br>**Plaintiff,**<br>**v.**<br><br>**NOVO NORDISK INC. and NOVO NORDISK A/S,**<br><br>**Defendants.** | **COMPLAINT AND JURY DEMAND**<br><br>**CIVIL ACTION NO.:____________** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff files this Complaint pursuant to the Direct Filing Order and is to be bound by the rights, protections and privileges, and obligations of that Direct Filing Order and other Orders of the Court. Further, in accordance with the Direct Filing Order, Plaintiff hereby designates the United States District Court for the Eastern District of New York as Plaintiff's designated venue ("Original Venue"). Plaintiff makes this selection based upon one (or more) of the following factors (check the appropriate box(es)):

--X-- Plaintiff currently resides in Mastic Beach, New York (City/State).

--X-- Plaintiff purchased and used Defendants' products in Mastic Beach, New York (City/State).

____ The Original Venue is a judicial district in which Defendant ______________ resides, and all Defendants are residents of the State in which the district is located (28 USC § 1391(b)(1)).

--X-- The Original Venue is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, specifically (28 USC § 1391(b)(2)).

____ There is no district in which an action may otherwise be brought under (28 USC § 1391, and the Original Venue is a judicial district in which Defendant ________________ is subject to the Court's personal jurisdiction with respect to this action (28 USC § 1391(b)(3)).

____ Other reason (please explain): ______________________________________________.

Plaintiff George Gottschalk, Sr., by and through his attorneys, ROBINSON CALCAGNIE, INC., upon information and belief, at all times hereinafter mentioned, alleges as follows:

**JURISDICTION**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states other than the state in which the named Plaintiff resides, which is New York.

2. This Court has personal jurisdiction over Defendants, consistent with the United States Constitution and *CPLR § 302* (New York's "long-arm" statute), as Plaintiff's claims arise out of Defendants' transaction of business, their tortious acts within the State of New York, and by virtue of Defendants' substantial, continuous, and systematic contacts with the State of New York unrelated to Plaintiff's claims.

**NATURE OF THE CASE**

3. This is an action for damages suffered by Plaintiff, George Gottschalk, Sr., who was severely injured as a result of his use of Ozempic, a prescription medication which is used to control blood sugar in adults with type 2 diabetes.

4. Ozempic is also known as semaglutide.

5. Ozempic works by targeting the body's receptors for GIP (glucose-dependent insulinotropic polypeptide) and GLP-1 (glucagon-like peptide-1).

6. Ozempic belongs to a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

7. Defendants acknowledge that gastrointestinal events are well known side effects of

the GLP-1RA class of drugs.[1] However, Defendants have downplayed the severity of the gastrointestinal events caused by Ozempic, never, for example, warning of the risks of gastroparesis ("paralyzed stomach") or gastroenteritis.

8. Gastroparesis is a condition that affects normal muscle movement in the stomach. Ordinarily, strong muscular contractions propel food through the digestive tract. However, in a person suffering from gastroparesis, the stomach's motility is slowed down or does not work at all, preventing the stomach from emptying properly. Gastroparesis can interfere with normal digestion, cause nausea, vomiting, abdominal pain, abdominal bloating, severe dehydration, a feeling of fulness after eating just a few bites, vomiting undigested food, undigested food that hardens and remains in the stomach, acid reflux, changes in blood sugar levels, lack of appetite, weight loss, malnutrition, and a decreased quality of life. There is no cure for gastroparesis.[2]

9. Gastroenteritis refers to inflammation of the stomach and intestines. While viral gastroenteritis is also known as stomach flu, gastroenteritis may also be caused by ingesting medications.[3] Its symptoms include vomiting, nausea, diarrhea, stomach cramps, muscle aches, headaches, and fever.[4] Notably, vomiting and diarrhea can cause dehydration, which is the main complication of gastroenteritis, and which can lead to death.[5]

**PARTY PLAINTIFF**

10. Plaintiff, George Gottschalk, Sr., is a citizen of the United States, and is a resident of the County of Suffolk, State of New York.

---

[1] *See, e.g.*, CT Jones, *Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell"*, Rolling Stone (July 25, 2023), available at https://www.rollingstone.com/culture/culture-news/ozempic-stomach-paralysis-weight-loss-side-effects-1234794601 (last visited September 26, 2023).

[2] *See* https://www.mayoclinic.org/diseases-conditions/gastroparesis/symptoms-causes/syc-20355787 (last visited February 18, 2025).

[3] *See* https://www.merckmanuals.com/home/digestive-disorders/gastroenteritis/drug-related-gastroenteritis-and-chemical-related-gastroenteritis (last visited February 18, 2025).

[4] *See* https://www.mayoclinic.org/diseases-conditions/viral-gastroenteritis/symptoms-causes/syc-20378847 (last visited February 18, 2025).

[5] *See* https://www.mayoclinic.org/diseases-conditions/viral-gastroenteritis/symptoms-causes/syc-20378847 (last visited February 18, 2025).

11. Plaintiff is 63 years old.

12. Plaintiff used Ozempic from approximately June 2023 to December 2023.

13. Plaintiff's physicians (collectively "prescribing physicians") prescribed the Ozempic which was used by Plaintiff.

14. As a result of using Defendants' Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events, and as a result sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses.

15. As a result of using Defendants' Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events, which resulted in gastroparesis, gastroenteritis, and their sequelae including vomiting, stomach and abdominal pain, inability to keep food and drink down, nausea, chronic diarrhea, gastrointestinal burning, severe acid reflux, and chronic constipation.

16. Plaintiff's injuries were caused by Defendants' drug, Ozempic.

## PARTY DEFENDANTS

17. Defendant Novo Nordisk Inc. is a Delaware corporation with a principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey.

18. Defendant Novo Nordisk A/S is a public limited liability company organized under the laws of Denmark with a principal place of business in Bagsværd, Denmark.

19. Defendants Novo Nordisk A/S and Novo Nordisk Inc. are collectively referenced herein as "the Novo Nordisk Defendants" and/or "Defendants".

20. The Novo Nordisk Defendants designed, researched, manufactured, tested, labeled, advertised, promoted, marketed, sold, and/or distributed Ozempic and are identified on its label.[6]

## FACTUAL BACKGROUND

### A. FDA's Approval of Ozempic

[6] *See* Ozempic Label (September 2023), available at https://www.accessdata.fda.gov/drugsatfda_docs/label/2023/209637s020s021lbl.pdf (last visited February 18, 2025).

21. On December 5, 2016, the Novo Nordisk Defendants announced submission of a new drug application (NDA) to the FDA for regulatory approval of a once-weekly injectable semaglutide, a new glucagon-like peptide-1 (GLP-1) medication for treatment of type 2 diabetes. In the announcement, the Novo Nordisk Defendants represented that in clinical trials "once-weekly semaglutide had a safe and well tolerated profile with the most common adverse event being nausea."[7]

22. On December 5, 2016, the Novo Nordisk Defendants submitted NDA 209637, requesting that the FDA grant it approval to market and sell Ozempic (semaglutide) 0.5 mg or 1 mg injection in the United States as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus. On December 5, 2017, the FDA approved NDA 209637.[8]

23. On March 20, 2019, the Novo Nordisk Defendants submitted a supplemental new drug application (sNDA) 209637-S-003 for Ozempic (semaglutide) 0.5 mg or 1 mg injection, requesting approval to expand its marketing of Ozempic by adding an indication to reduce the risk of major adverse cardiovascular events in adults with type 2 diabetes and established cardiovascular disease.[9] On January 16, 2020, the FDA approved sNDA 209637-S-003.[10]

---

[7] Novo Nordisk, *Novo Nordisk files for regulatory approval of once-weekly semaglutide in the US and EU for the treatment of type 2 diabetes* (December 5, 2016), available at https://ml.globenewswire.com/Resource/Download/d2f719e1-d69f-4918-ae7e-48fc6b731183 (last visited September 26, 2023).

[8] FDA Approval Letter for NDA 209637 (Ozempic), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2017/209637s000ltr.pdf (last visited September 26, 2023).

[9] *Novo Nordisk files for US FDA approval of oral semaglutide for blood sugar control and cardiovascular risk reduction in adults with type 2 diabetes*, Cision PR Newswire (March 20, 2019), available at https://www.prnewswire.com/news-releases/novo-nordisk-files-for-us-fda-approval-of-oral-semaglutide-for-blood-sugar-control-and-cardiovascular-risk-reduction-in-adults-with-type-2-diabetes-300815668.html (last visited September 26, 2023).

[10] FDA Supplement Approval Letter for NDA 209637/A-003 (Ozempic), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2020/209637Orig1s003ltr.pdf (last visited September 26, 2023).

24. On May 28, 2021, the Novo Nordisk Defendants submitted sNDA 209637-S-009, requesting approval for a higher 2 mg dose of Ozempic (semaglutide) injection. On March 28, 2022, the FDA approved sNDA 209637-S-009.[11]

25. On March 28, 2022, the Novo Nordisk Defendants announced the FDA's approval of sNDA 209637/S-009 for a higher 2 mg dose of Ozempic (semaglutide) injection. In the press release, the Novo Nordisk Defendants represented Ozempic as having "proven safety and efficacy" and advertised that "plus it can help many patients lose some weight."[12] As with its prior press releases, the Novo Nordisk Defendants disclosed Important Safety Information and provided a link to the Medication Guide and Prescribing Information, but neither severe gastrointestinal events, nor chronic cholecystitis, nor other gallbladder- or biliary-related diseases and issues were not identified as risks.

**B. The Novo Nordisk Defendants' Marketing and Promotion of Ozempic**

26. On December 5, 2017, the Defendants announced the FDA's approval of Ozempic (semaglutide) 0.5 mg or 1 mg injection in a press release stating that: "Novo Nordisk expects to launch OZEMPIC® in the U.S. in Q1 2018, with a goal of ensuring broad insurance coverage and patient access to the product. OZEMPIC® will be priced at parity to current market-leading weekly GLP-1Ras and will be offered with a savings card program to reduce co-pays for eligible commercially-insured patients. Additionally, as part of the access strategy, Novo Nordisk is working with appropriate health insurance providers to establish innovative contracting solutions."[13]

---

[11] FDA Supplement Approval Letter for NDA 209637/A-009 (Ozempic), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/209637Orig1s009ltr.pdf (last visited September 26, 2023).

[12] *Novo Nordisk receives FDA approval of higher-dose Ozempic® 2 mg providing increased glycemic control for adults with type 2 diabetes*, Cision PR Newswire (March 28, 2022), available at https://www.prnewswire.com/news-releases/novo-nordisk-receives-fda-approval-of-higher-dose-ozempic-2-mg-providing-increased-glycemic-control-for-adults-with-type-2-diabetes-301512209.html (last visited September 26, 2023).

[13] *Novo Nordisk Receives FDA Approval of OZEMPIC® (semaglutide) Injection For the Treatment of Adults with Type 2 Diabetes*, Cision PR Newswire (December 5, 2017), available at https://www.prnewswire.com/news-releases/novo-nordisk-receives-fda-approval-of-ozempic-

27. On February 5, 2018 the Novo Nordisk Defendants announced that they had started selling Ozempic in the United States and touted the medication as a "new treatment option []" that "addresses the concerns and needs of people with diabetes[.]" The Novo Nordisk Defendants offered an "Instant Savings Card to reduce co-pays to as low as $25 per prescription fill for up to two years."[14]

28. The Nordisk Defendants promoted the safety and sale of Ozempic in the United States on its websites, in press releases, through in-person presentations, through the drug's label, in print materials, on social media, and through other public outlets.

29. On July 30, 2018, the Novo Nordisk Defendants launched their first television ad for Ozempic, to the tune of the 1970s hit pop song "Magic" by Pilot, wherein the Novo Nordisk Defendants advertised that "adults lost on average up to 12 pounds" when taking Ozempic, even though it is not indicated for weight loss.[15]

30. On March 28, 2022, the Novo Nordisk Defendants announced the FDA's approval of sNDA 209637-S-009 for a higher 2 mg dose of Ozempic (semaglutide) injection. In the press release, the Novo Nordisk Defendants represented Ozempic as having "proven safety" and advertised that "plus it can help many patients lose some weight."[16]

---

semaglutide-injection-for-the-treatment-of-adults-with-type-2-diabetes-300567052.html (last visited September 26, 2023).

[14] *Novo Nordisk Launches Ozempic® and Fiasp®, Expanding Treatment Options for Adults with Diabetes*, Cision PR Newswire (February 5, 2018), available at https://www.prnewswire.com/news-releases/novo-nordisk-launches-ozempic-and-fiasp-expanding-treatment-options-for-adults-with-diabetes-300592808.html (last visited September 26, 2023).

[15] *Ozempic TV Spot, 'Oh!'*, iSpot.tv (July 30, 2018), available at https://www.ispot.tv/ad/d6Xz/ozempic-oh (last visited September 26, 2023).

[16] *Novo Nordisk receives FDA approval of higher-dose Ozempic® 2 mg providing increased glycemic control for adults with type 2 diabetes*, Cision PR Newswire (March 28, 2022), available at https://www.prnewswire.com/news-releases/novo-nordisk-receives-fda-approval-of-higher-dose-ozempic-2-mg-providing-increased-glycemic-control-for-adults-with-type-2-diabetes-301512209.html (last visited September 26, 2023).

31. Since 2018, the Novo Nordisk Defendants have spent more than $884,000,000 on television ads in the United States to promote its semaglutide drugs (Ozempic, Wegovy, and Rybelsus) with the majority of the spending allocated specifically to advertising Ozempic.[17]

32. In 2022, the Novo Nordisk Defendants spent $180.2 million on Ozempic ads, including an estimated $157 million on national television ads for Ozempic, making Ozempic the sixth most advertised drug that year. As a result of its GLP-1RA treatments, including Ozempic, the Novo Nordisk Defendants forecasted sales growth of 13% to 19% for 2023.[18]

33. On July 6, 2023, it was reported that the Novo Nordisk Defendants had spent $11 million in 2022 on food and travel for doctors "as part of its push to promote Ozempic and other weight loss-inducing diabetes drugs."[19] The spending bought more than 457,000 meals for almost 12,000 doctors while also flying doctors to places like London, Paris, Orlando, and Honolulu.[20]

34. In an article published on July 21, 2023, the President and CEO of the Alliance of Community Health Plans described Novo Nordisk's spending on meals for doctors as "outrageous" and suggested that the millions Novo Nordisk spent marketing its drugs to prescribers would be better used furthering research about potential side effects and long-term effectiveness. The author cited research published in the spring of 2023 showing an increased risk of intestinal obstruction as a result of using GLP-1RA drugs.[21]

---

[17] Ritzau, *Novo Nordisk runs TV ads in US for multimillion-dollar sum*, MedWatch (April 26, 2023), available at https://medwatch.com/News/Pharma_Biotech/article15680727.ece (last visited September 26, 2023).

[18] Adams, B., Fierce Pharma, *The top 10 pharma drug ad spenders for 2022*, available at https://www.fiercepharma.com/special-reports/top-10-pharma-drug-brand-ad-spenders-2022 (last visited September 26, 2023).

[19] Florko, N., *Novo Nordisk bought prescribers over 450,000 meals and snacks to promote drugs like Ozempic*, National Center for Health Research (July 5, 2023), available at https://www.center4research.org/novo-nordisk-gave-doctors-450000-meals-ozempic/ (last visited September 26, 2023).

[20] *Id.*

[21] Erin Prater, *Ozempic manufacturer Novo Nordisk spent $11 million last year 'wining and dining' doctors. Experts slam the move as a breach of doctor-patient trust*, Fortune Well (July 21, 2023), available at https://fortune.com/wll/2023/07/21/ozempic-novo-nordisk-meals-travel-prescribing-doctors/ (last visited September 26, 2023); *see also* Erin Prater, *Weight-loss drugs like Ozempic and Wegovy may put certain people at risk of serious complications, researchers warn*,

35. As a result of the Novo Nordisk Defendants' advertising and promotion efforts, Ozempic has been widely used throughout the United States. The number of prescriptions filled reached an all-time high of 373,000 in one week in February of 2023, with more than half of those being new prescriptions.[22] In June 2023, it was reported that new prescriptions for Ozempic had surged by 140 percent from the prior year.[23]

36. On TikTok, the hashtag #Ozempic had 273 million views as of November 22, 2022,[24] and currently has over 1.3 billion views.[25]

37. On June 15, 2023, NBC News published a report about the "thousands of weight-loss ads on social media for the drugs Ozempic and Wegovy." While many of those ads were found to be from online pharmacies, medical spas, and diet clinics, as of June of 2023, the Novo Nordisk Defendants were still running online social media ads for its semaglutide products, despite claiming in May that it would stop running ads due to a shortage of the drug.[26]

---

Fortune Well (March 7, 2023), available at https://fortune.com/well/2023/03/07/ozempic-wegovy-elevated-risk-intestinal-obstruction-later-type-2-diabetes-weight-loss-drug/ (last visited October 18, 2023).

[22] Choi A, Vu H, *Ozempic prescriptions can be easy to get online. Its popularity for weight loss is hurting those who need it most*, CNN (March 17, 2023), available at https://www.cnn.com/2023/03/17/health/ozempic-shortage-tiktok-telehealth/ (last visited September 26, 2023).

[23] Gilbert D, *Insurers clamping down on doctors who prescribe Ozempic for weight loss*, The Washington Post (June 12, 2023), available at https://www.washingtonpost.com/business/2023/06/11/weight-loss-ozempic-wegovy-insurance/ (last visited September 26, 2023).

[24] Blum D, *What is Ozempic and Why Is It Getting So Much Attention?*, The New York Times (published November 22, 2022, updated July 24, 2023), available at https://www.nytimes.com/2022/11/22/well/ozempic-diabetes-weight-loss.html (last visited September 26, 2023).

[25] *See* https://www.tiktok.com/tag/ozempic (last visited November 14, 2023).

[26] Ingram D, *More than 4,000 ads for Ozempic-style drugs found running on Instagram and Facebook*, NBC News (June 15, 2023), available at https://www.nbcnews.com/tech/internet/ozempic-weight-loss-drug-ads-instagram-wegovy-semaglutiude-rcna88602 (last visited September 26, 2023).

38. On July 20, 2023, a global media company declared Ozempic as "2023's buzziest drug" and one of the "Hottest Brands, disrupting U.S, culture and industry."[27]

39. At all relevant times, the Novo Nordisk Defendants were in the business of, and did design, research, manufacture, test, advertise, promote, market, sell, and/or distribute Ozempic.

**C. Defendants Failed to Warn of the Risk of Severe Gastrointestinal Events, Including Gastroparesis and Gastroenteritis and Their Sequelae, From Use of Ozempic**

40. Gastroparesis is a disorder that slows or stops the movement of food from the stomach to the small intestine, even though there is no blockage in the stomach or intestines. Gastroparesis may also be called delayed gastric emptying.[28]

41. Gastroenteritis refers to inflammation of the stomach and intestines. Its symptoms include (but are not limited to) vomiting and diarrhea, which can cause dehydration.[29] Gastroenteritis may be caused by ingesting medications.[30]

42. Defendants' main promotional website for Ozempic includes a variety of information about the benefits of their drug relating to weight loss, however, Defendants do not disclose the risk of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, on their promotional website.

43. None of Defendants' additional advertising or promotional materials warned prescription providers or the general public of the risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

44. On June 29, 2023, the American Society of Anesthesiologists ("ASA") warned that patients taking GLP-1RAs should stop the medication at least a week before elective surgery

---

[27] Bain P, *Ozempic was 2023's Buzziest Drug*, AdAge (July 10, 2023), available at https://adage.com/article/special-report-hottest-brands/ozempic-hottest-brands-most-popular-marketing-2023/2500571 (last visited September 26, 2023).

[28] *See* https://www.niddk.nih.gov/health-information/digestive-diseases/gastroparesis (last visited February 19, 2025).

[29] *See* https://www.mayoclinic.org/diseases-conditions/viral-gastroenteritis/symptoms-causes/syc-20378847 (last visited February 19, 2025).

[30] *See* https://www.merckmanuals.com/home/digestive-disorders/gastroenteritis/drug-related-gastroenteritis-and-chemical-related-gastroenteritis (last visited February 19, 2025).

because these medications “delay gastric (stomach) emptying” and “the delay in stomach emptying could be associated with an increased risk of regurgitation and aspiration of food into the airways and lungs during general anesthesia and deep sedation.” The ASA also warned that the risk is higher where patients on these medications have experienced nausea and vomiting.[31]

45. On July 25, 2023, CNN Health reported that patients taking GLP-1RAs have been diagnosed with severe gastrointestinal events “which their doctors think may have resulted from or been exacerbated by the medication they were taking […].” Another patient taking a GLP-1RA suffered ongoing nausea and vomiting, which was not diagnosed, but which needed to be managed with Zofran and prescription probiotics.[32]

46. From the dates Defendants received FDA approval to market Ozempic, until the present time, the Defendants made, distributed, marketed, and/or sold Ozempic without adequate warnings to Plaintiff’s prescribing physicians and/or Plaintiff that Ozempic was causally associated with, and/or could cause severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

47. Upon information and belief, Defendants knew of the association between the use of GLP-1RAs and the risk of developing severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae. Defendants’ knowledge derived from their clinical studies, case reports, and the medical literature, including the medical literature and case reports referenced above in this Complaint.

[31] American Society of Anesthesiologists, *Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective Surgery, ASA Suggests* (June 29, 2023), available at https://www.asahq.org/about-asa/newsroom/news-releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop-before-elective-surgery (last visited September 19, 2023).

[32] Brenca Goodman, *They took blockbuster drugs for weight loss and diabetes. Now their stomachs are paralyzed,* CNN Health (July 25, 2023), available at https://www.cnn.com/2023/07/25/health/weight-loss-diabetes-drugs-gastroparesis (last visited September 19, 2023).

48. Upon information and belief, Defendants ignored the association between the use of GLP-1RAs and the risk of developing severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

49. Defendants' failure to disclose information that they possessed regarding the association between the use of GLP-1RAs and the risk of developing severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, rendered the warnings for these medications inadequate.

50. By reason of the foregoing acts and omissions, Plaintiff was and still is caused to suffer from severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

## FIRST CAUSE OF ACTION

## (NEGLIGENCE – FAILURE TO WARN – AGAINST ALL DEFENDANTS)

51. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

52. New York law imposes a duty on producers, manufacturers, distributors, lessors, and sellers of a product to exercise all reasonable care when producing, manufacturing, distributing, leasing, and selling their products.

53. At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic which was used by the Plaintiff.

54. Ozempic was expected to, and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

55. At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because it did not adequately warn of the risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, especially when used in the form and manner as provided by Defendants.

56. Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

57. Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physicians, without adequate warnings.

58. Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

59. At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended— namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

60. At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of an ordinary consumer, particularly the Plaintiff.

61. Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that its product would not cause users to suffer unreasonable, dangerous injuries, such as severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

62. At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise for weight management.

63. The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as the Defendants knew or should have known that the product created a risk of serious

and dangerous injuries, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, and other severe and personal injuries which are permanent and lasting in nature, and the Defendants failed to adequately warn of said risks.

64. The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote their product, Ozempic.

65. The label for Ozempic was inadequate because it did not warn and/or adequately warn of all possible adverse side effects associated with the use of Ozempic, including the increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

66. The label for Ozempic was inadequate because it did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

67. The label for Ozempic was inadequate because it did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

68. The label for Ozempic was inadequate because it did not warn and/or adequately warn of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects.

69. Communications made by Defendants to Plaintiff and his prescribing physicians were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic, including the increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

70. Communications made by Defendants to Plaintiff and his prescribing physicians were inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not

been sufficiently and/or adequately tested for safety risks, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

71. Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his reliance upon Defendants' warnings was reasonable.

72. Plaintiff's prescribing physicians had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and their reliance upon Defendants' warnings was reasonable.

73. Upon information and belief, had Plaintiff's prescribing physicians been warned of the increased risks associated with Ozempic, they would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiff to make an informed decision regarding his use of Ozempic.

74. Upon information and belief, had Plaintiff's prescribing physicians been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, such as severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, they would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic so as to allow Plaintiff to make an informed decision regarding his use of Ozempic.

75. If Plaintiff had been warned of the increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae causally associated with Ozempic, then Plaintiff would not have used Ozempic and/or suffered from severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

76. If Plaintiff had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, he would not have used Ozempic and/or suffered from severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

77. If Plaintiff had been warned of the increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae associated with Ozempic, he would have informed his prescribers that he did not want to take Ozempic.

78. Upon information and belief, if Plaintiff had informed his prescribing physicians that he did not want to take Ozempic due to the risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, or the lack of adequate testing for safety risks, then his prescribing physicians would not have prescribed Ozempic.

79. By reason of the foregoing, Defendants have become liable to the Plaintiff for the designing, marketing, promoting, distribution and/or selling of their unreasonably dangerous product, Ozempic.

80. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed defective product which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

81. Defendants' inadequate warnings of Ozempic were acts which amount to willful, wanton, and/or reckless conduct by Defendants.

82. Said inadequate warnings for Defendants' drug Ozempic was a substantial factor in causing Plaintiff's injuries.

83. As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

84. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related

expenses. Plaintiff is informed and believes and further alleges that he will require future medical and/or hospital care, attention, and services.

**SECOND CAUSE OF ACTION**

**(STRICT LIABILITY – FAILURE TO WARN – AGAINST ALL DEFENDANTS)**

85. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

86. New York law imposes a duty on producers, manufacturers, distributors, lessors, and sellers of a product to exercise all reasonable care when producing, manufacturing, distributing, leasing, and selling their products.

87. At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic which was used by Plaintiff.

88. Ozempic was expected to, and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

89. At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, especially when used in the form and manner as provided by Defendants.

90. Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

91. Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physicians, without adequate warnings.

92. Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

93. At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

94. At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

95. Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

96. At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise for weight management.

97. The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risks.

98. The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote their product, Ozempic.

99. The label for Ozempic was inadequate because it did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic, including the increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

100. The label for Ozempic was inadequate because it did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

101. The label for Ozempic was inadequate because it did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

102. The label for Ozempic was inadequate because it did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

103. Communications made by Defendants to Plaintiff and Plaintiff's prescribing physicians were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic, including the increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

104. Communications made by Defendants to Plaintiff and Plaintiff's prescribing physicians were inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

105. Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

106. Plaintiff's prescribing physicians had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and their reliance upon Defendants' warnings was reasonable.

107. Upon information and belief, had Plaintiff's prescribing physicians been warned of the increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and

their sequelae, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

108. Upon information and belief, had Plaintiff's prescribing physicians been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, the prescribing physicians would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

109. If Plaintiff had been warned of the increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, which are causally associated with Ozempic, then Plaintiff would not have used Ozempic and/or suffered from severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

110. If Plaintiff had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, then Plaintiff would not have used Ozempic and/or suffered severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

111. If Plaintiff had been warned of the increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, which are causally associated with Ozempic, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Ozempic.

112. Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physicians that Plaintiff did not want to take Ozempic due to the risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physicians would not have prescribed Ozempic.

113. By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of their unreasonably dangerous product, Ozempic.

114. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

115. Defendants' inadequate warnings for Ozempic were acts which amount to willful, wanton, and/or reckless conduct by Defendants.

116. Said inadequate warnings for Defendants' drug Ozempic was a substantial factor in causing Plaintiff's injuries.

117. As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

118. As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**THIRD CAUSE OF ACTION**

**(BREACH OF EXPRESS WARRANTY UNDER NY UCC § 2-313 – AGAINST ALL DEFENDANTS)**

119. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

120. At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic which was used by Plaintiff.

121. At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physicians that Ozempic was safe as an adjunct to diet and exercise for weight management.

122. The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physicians by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

123. As a result of Defendants' express warranties, Plaintiff's prescribing physicians were induced to prescribe Ozempic to Plaintiff, and Plaintiff was induced to use Ozempic.

124. At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Ozempic based upon their express warranties.

125. At all relevant times, Defendants reasonably anticipated and expected that prescribing physicians, such as Plaintiff's prescribing physicians, would recommend, prescribe and/or dispense Ozempic based upon their express warranties.

126. At all relevant times, Defendants knew or should have known that Ozempic was unreasonably dangerous because of its increased risk of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, especially when the drug was used in the form and manner as provided by Defendants.

127. At all relevant times, Defendants knew or should have known that Ozempic had not been sufficiently and/or adequately tested for safety.

128. The unreasonably dangerous characteristics of Ozempic were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drug's characteristics.

129. The unreasonably dangerous characteristics of Ozempic were beyond that which would be contemplated by Plaintiff's prescribing physicians, with the ordinary knowledge common to prescribing physician as to the drug's characteristics.

130. At the times Ozempic left Defendants' control, Ozempic did not conform to Defendants' express warranties because Ozempic was not safe to use as an adjunct to diet and exercise for weight management, in that it was causally associated with increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

131. The express warranties made by Defendants regarding the safety of Ozempic were made with the intent to induce Plaintiff to use the product and/or Plaintiff's prescribing physicians to prescribe the product.

132. Defendants knew and/or should have known that by making the express warranties to Plaintiff and/or Plaintiff's prescribing physicians, it would be the natural tendency of Plaintiff to use Ozempic and/or the natural tendency of Plaintiff's prescribing physicians to prescribe Ozempic.

133. Plaintiff and Plaintiff's prescribing physicians, as well as members of the medical community, relied on the express warranties of Defendants identified herein.

134. Had Defendants not made these express warranties, Plaintiff would not have used Ozempic and/or, upon information and belief, Plaintiff's prescribing physicians would not have prescribed Ozempic.

135. Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

136. Plaintiff's injuries and damages arose from a reasonably anticipated use of the product by Plaintiff.

137. Accordingly, Defendants are liable as a result of their breaches of express warranties to Plaintiff.

138. As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including severe gastrointestinal events, including gastroparesis, gastroenteritis,

and their sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

139. As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**FOURTH CAUSE OF ACTION**

**(BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS UNDER NY UCC § 2-314 – AGAINST ALL DEFENDANTS)**

140. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

141. At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic which was used by Plaintiff.

142. Ozempic was expected to, and did reach the usual consumers, handlers, and persons encountering said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

143. At all relevant times, Defendants impliedly warranted to Plaintiff, Plaintiff's prescribing physicians, and the medical community that Ozempic was of merchantable quality and safe and fit for its ordinary purposes.

144. At all relevant times, Defendants knew or should have known that Ozempic was unreasonably dangerous because of its increased risk of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, especially when the drug was used in the form and manner as provided by Defendants.

145. At all relevant times, Defendants knew or should have known that Ozempic had not been sufficiently and/or adequately tested for safety.

146. At the times Ozempic left Defendants' control, Ozempic did not conform to Defendants' implied warranty of merchantability and was unfit for its ordinary purposes because Defendants failed to provide adequate warnings of the drug's causal associations with increased risk of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

147. At all relevant times, Defendants reasonably anticipated and expected that prescribing physicians, such as Plaintiff's prescribing physicians, would recommend, prescribe and/or dispense Ozempic for use by their patients to promote weight loss.

148. At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Ozempic for its ordinary purposes.

149. Despite the fact that Defendants knew or should have known that Ozempic can cause unreasonably dangerous injuries, such as severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

150. The unreasonably dangerous characteristics of Ozempic were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drug's characteristics.

151. The unreasonably dangerous characteristics of Ozempic was beyond that which would be contemplated by Plaintiff's prescribing physicians, with the ordinary knowledge common to prescribing physician as to the drug's characteristics.

152. Plaintiff reasonably relied on Defendants' implied warranties of merchantability and fitness relating to Ozempic's safety and efficacy.

153. Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Ozempic was of merchantable quality and safe and fit for its intended use.

154. Upon information and belief, Plaintiff's prescribing physicians relied on Defendants' implied warranties of merchantability and fitness for the ordinary use and purposes relating to Ozempic.

155. Upon information and belief, Plaintiff's prescribing physicians reasonably relied upon the skill and judgment of Defendants as to whether Ozempic was of merchantable quality and safe and fit for its intended use.

156. Had Defendants not made these implied warranties, Plaintiff would not have used Ozempic and/or, upon information and belief, Plaintiff's prescribing physicians would not have prescribed Ozempic, and/or would have altered their prescribing practices and/or, would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

157. Defendants herein breached the aforesaid implied warranties of merchantability and fitness because the drug Ozempic was not fit for its intended purposes.

158. Defendants' breaches of the implied warranties of merchantability and fitness were a substantial factor in causing Plaintiff's injuries.

159. As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

160. As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**FIFTH CAUSE OF ACTION**

**(FRAUDULENT CONCEALMENT – AGAINST ALL DEFENDANTS)**

161. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

162. At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic, which was used by Plaintiff as herein above described.

163. At all relevant times, Defendants knew or should have known that Ozempic had not been adequately and/or sufficiently tested for safety.

164. At all relevant times, Defendants knew or should have known that Ozempic was unreasonably dangerous because of the increased risk of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, especially when the drug was used in the form and manner as provided by Defendants.

165. Defendants had a duty to disclose material information about Ozempic to Plaintiff and Plaintiff's prescribing physicians, namely that Ozempic is causally associated with increased risk of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, because Defendants have superior knowledge of the drugs and their dangerous side effects, this material information is not readily available to Plaintiff or Plaintiff's prescribing physicians by reasonable inquiry, and Defendants knew or should have known that Plaintiff and Plaintiff's prescribing physician would act on the basis of this mistaken knowledge.

166. Nonetheless, Defendants consciously and deliberately withheld and concealed from Plaintiff's prescribing physicians, Plaintiff, the medical and healthcare community, and the general public this material information.

167. Although the Ozempic label lists nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in patients, it does not disclose the fact that

severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae are chronic conditions that can result as a consequence of taking Ozempic.

168. Defendants' promotional website for Ozempic similarly does not disclose that Ozempic is causally associated with increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

169. Defendants' omissions and concealment of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physicians, and patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Ozempic for weight control.

170. Defendants knew or should have known that Plaintiff's prescribing physicians would prescribe, and Plaintiff would use Ozempic without the awareness of the risks of serious side effects, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

171. Defendants knew that Plaintiff and Plaintiff's prescribing physicians had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Ozempic, as set forth herein.

172. Upon information and belief, Plaintiff's prescribing physicians justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decisions to dispense, provide, and prescribe Ozempic.

173. Upon information and belief, had Plaintiff's prescribing physicians been warned of the increased risk of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae causally associated with Ozempic, they would not have prescribed Ozempic and/or would have provided Plaintiff with adequate information regarding the increased risk of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae causally associated with Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

174. Upon information and belief, had Plaintiff's prescribing physicians been told that Ozempic had not been sufficiently and/or adequately tested for safety risks, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, they would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

175. Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to purchase and/or consume Ozempic.

176. Had Plaintiff been informed of the increased risks causally associated with Ozempic, Plaintiff would not have used Ozempic and/or suffered severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

177. Defendants' fraudulent concealments were a substantial factor in causing Plaintiff's injuries.

178. As a direct and proximate result of the above stated omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

179. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SIXTH CAUSE OF ACTION

## (FRAUDULENT MISREPRESENTATION – AGAINST ALL DEFENDANTS)

180. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

181. At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic, which was used by Plaintiff as herein above described.

182. At all relevant times, Defendants knew or should have known that Ozempic had not been adequately and/or sufficiently tested for safety.

183. At all relevant times, Defendants knew or should have known of the serious side effects of Ozempic, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

184. At all relevant times, Defendants knew or should have known that Ozempic were not safe to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk in patients with type 2 diabetes, or promote weight loss, given its increased risk of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

185. Nonetheless, Defendants made material misrepresentations to Plaintiff, Plaintiff's prescribing physicians, the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Ozempic.

186. Defendants represented affirmatively and by omission on television advertisements and on the label of Ozempic that Ozempic was a safe and effective drug for treatment of adults with type 2 diabetes, despite being aware of increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae causally associated with using Ozempic.

187. Defendants were aware or should have been aware that their representations were false or misleading and knew that they were concealing and/or omitting material information from

Plaintiff, Plaintiff's prescribing physicians, the medical and healthcare community, and the general public.

188. Defendants' misrepresentations of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physicians, and adult type 2 diabetes patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Ozempic for weight management.

189. Upon information and belief, Plaintiff's prescribing physicians had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Ozempic, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff's prescribing physicians had no way to know were omitted.

190. Upon information and belief, Plaintiff's prescribing physicians justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Ozempic to Plaintiff.

191. Upon information and belief, had Plaintiff's prescribing physicians been informed of the increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, causally associated with Ozempic, Plaintiff's prescribing physicians would not have prescribed Ozempic and/or would have provided Plaintiff with adequate information regarding safety of Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

192. Upon information and belief, had Plaintiff's prescribing physicians been told that Ozempic had not been sufficiently and/or adequately tested for safety risks, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, they would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic so that Plaintiff can make an informed decision regarding Plaintiff's use of Ozempic.

193. Plaintiff had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Ozempic, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

194. Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to accept, purchase and/or consume Ozempic.

195. Had Plaintiff been told of the increased risks of severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae causally associated with Ozempic, Plaintiff would not have used Ozempic and/or suffered severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

196. Had Plaintiff been told of the lack of sufficient and/or appropriate testing of Ozempic for safety risks, including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, Plaintiff would not have used Ozempic and/or suffered severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae.

197. As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

198. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SEVENTH CAUSE OF ACTION

## (UNFAIR TRADE/CONSUMER PROTECTION VIOLATIONS UNDER THE NEW YORK UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, NEW YORK GENERAL BUSINESS LAW ((GBL)) § 349 AND THE FAIR BUSINESS PRACTICES ACT – AGAINST ALL DEFENDANTS)

199. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

200. Defendants deliberately and/or negligently misrepresented the safety of Ozempic and concealed the risks attendant to the use of Ozempic. Through their misrepresentations, Defendants' conduct had the tendency or capacity to deceive, and affected the decisions of consumers, particularly Plaintiff and Plaintiff's prescribing physicians, to purchase, prescribe and use Ozempic, and to exclude the option of not using Ozempic for treatment.

201. Defendants, while engaged in the conduct and practices identified above, committed one or more violations of state laws related to unfair or deceptive acts or practices, including but not limited to, the following:

a. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Ozempic;

b. Representing that Ozempic had sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that it does not have;

c. Representing that Defendants' authors, key opinion leaders, consultants, and speakers do not have a sponsorship, approval, status, affiliation, or connection that they do have;

d. Representing that Ozempic is of a particular standard, quality, or grade;

e. Concealing information that severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae are risks of taking Ozempic and are chronic conditions that can result as a consequence of taking Ozempic;

f. Concealing information that Ozempic had not been adequately and/or sufficiently tested for safety;

g. Engaging in other fraudulent or deceptive conduct which created the likelihood of confusion or of misunderstanding, as alleged in this Complaint.

202. As a result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

203. As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**EIGHTH CAUSE OF ACTION**

**(NEGLIGENCE - DESIGN DEFECT – AGAINST ALL DEFENDANTS)**

204. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

205. Defendants are liable to Plaintiff for the injuries and damages sustained due to Defendants' negligent design and/or formulation of Ozempic.

206. At all relevant times to this lawsuit, Defendants owed a duty to consumers including Plaintiff and Plaintiff's prescribing physicians, to assess, manage, and communicate the risks, dangers, and adverse effects of Ozempic. Defendants' duties included, but were not limited to, carefully and properly designing, testing, studying, and manufacturing Ozempic.

207. Defendants negligently and carelessly breached the above-described duties to Plaintiff by, among other acts and omissions, negligently and carelessly:

a. Failing to use ordinary care in designing, testing, and manufacturing Ozempic;
b. Failing to design Ozempic so as to properly minimize the adverse effects on the gastrointestinal and immune systems;
c. Failing to counteract in the design the known adverse effects on the gastrointestinal and immune systems;
d. Designing a product, namely Ozempic, where the benefits were greatly outweighed by the risks, including malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, intestinal obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, intraoperative aspiration, and death;
e. Designing a product, namely Ozempic, without taking into consideration the proper dosages which could avoid malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, intestinal obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, intraoperative aspiration, and death;
f. Designing a product, namely Ozempic, which when it left Defendants' hands, the foreseeable risks exceeded the benefits associated with the design or formulation.

208. At all reasonable times, given its lack of efficacy and increased safety risks, Ozempic did not meet the reasonable expectations of an ordinary consumer, particularly the Plaintiff, or in the alternative, Plaintiff's prescribing physicians.

209. Ozempic was defective in design or formulation in that, when it left Defendants' hands, it was unreasonably dangerous, more dangerous than an ordinary consumer, particularly the Plaintiff and Plaintiff's prescribing physicians would expect, and more dangerous than other similar drugs.

210. Despite Defendants' knowledge of the foreseeable risks and unreasonably dangerous nature of Ozempic, Defendants designed and brought the product to market and

continued to market the drug when there were safer alternatives available, including but not limited to alternative dosing, reduced exposure, among others.

211. As a direct and proximate result of Defendants' negligent and reckless design, Plaintiff was caused to suffer serious and dangerous injuries including severe gastrointestinal events, including gastroparesis, gastroenteritis, and their sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

212. As a direct and proximate result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## **PRAYER FOR JUDGMENT**

WHEREFORE, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1. Awarding compensatory damages to Plaintiff, George Gottschalk, Sr., for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, George Gottschalk, Sr., health care costs, medical monitoring, together with interest and costs as provided by law.

2. Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff, George Gottschalk, Sr., in an amount sufficient to punish Defendants and deter future similar conduct;

3. Awarding Plaintiff, George Gottschalk, Sr., reasonable attorneys' fees;

4. Awarding Plaintiff, George Gottschalk, Sr., the costs of these proceedings; and

5. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY**

Plaintiff George Gottschalk, Sr. hereby demands a trial by jury as to all issues.

Dated: August 18, 2026

RESPECTFULLY SUBMITTED,

/s/ *Daniel S. Robinson*

Daniel S. Robinson
Jennifer M. Collins
ROBINSON CALCAGNIE, INC.
19 Corporate Plaza Drive
Newport Beach, California 92660
Tele: 949-720-1288; Fax: 949-720-1292
drobinson@robinsonfirm.com
jcollins@robinsonfirm.com

*Attorneys for Plaintiff*
George Gottschalk, Sr.